No. 2567.

## GULF, COLORADO & SANTA FE RAILWAY COMPANY *v.* WILLIAM WALKER, JR.

1. EVIDENCE—RAILWAYS.—A boy passing over a railway along a public street where pedestrians were accustomed to pass had his foot caught between the rails of the switch and was run over by a passing train. In an action against the railway company to recover damage, *held:* Evidence that a contrivance simple in its character which obviated the danger of being thus caught and injured, and which was in use on a few roads of a distant State, in connection with evidence that no safeguards were used by the defendant was admissible, the evidence showing that without some guard the track was dangerous to brakemen and pedestrians, and that the safeguard was a simple, safe and effectual device. See opinion for a charge on the subject, which was held to have been properly refused.

2. RAILWAY COMPANY—NEGLIGENCE.—A railway company is bound to use a degree of caution in operating its train over the streets of a city corresponding to the danger incident thereto. when from the absence of sidewalks near the track persons may be expected to walk along and across the track.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Plaintiff sued for twenty thousand dollars actual, and ten thousand dollars exemplary, damages, alleged to have been sustained by one of his feet being cut off by one of defendant's trains, within the corporate limits of the city of Houston, and on a public street of said city. The negligence charged against defendant was that the switch, where plaintiff was hurt, was improperly constructed, so that where the rails came together there was great danger of a person getting his foot caught between the rails, and nothing was placed between them to prevent any one from being thus caught. That plaintiff was walking along on the track, and one of defendant's trains came along behind him, without ringing any bell or blowing any whistle, and when plaintiff discovered the train he attempted to leave the track, and in doing so, got his foot caught between the rails of the switch, and before he could extricate his foot, that the train ran over him and cut his foot off.

The defendant answered by general demurrer and denial, and pleaded specially that if the plaintiff was injured, that his injuries were occasioned by his own fault and neglect, and not through defendant's negligence. That plaintiff was walking on defendant's track, where he was a trespasser, and had no right to be, and that as defendant's train approached him the bell was ringing and the whistle blowing. That plaintiff saw the train approaching in full time to have left the track before the train reached him, and that if he got his foot caught and was run over, it was not defendant's fault and negligence, but because of his own carlessness and fault, for which defendant was in no way responsible.

The cause was tried at the October term, 1887, of the district court of Harris county, and resulted in a verdict and judgment for plaintiff for two thousand dollars.

*Jones & Garnett,* for appellant: The testimony objected to relating to safeguards should have been excluded because it did not show, or tend to show, that the improvement spoken of by the witnesses, that is the placing of wooden blocks between the switch rails where they come near together, was in general use, or in use anywhere in Texas, or in the South, but on the contrary was only used by the three or four Northern railroads mentioned by the witnesses, and it did not appear that this new device or improvement was generally known, or that so far as the witnesses knew that it was other than an experiment.

The following charge asked by defendant was refused: "The jury are instructed that the defendant's railroad track, or any track that it uses, is its own property so far as strangers are concerned, and that any person going upon a railroad track, other than at a public crossing, without the authority or permission of the company, is a trespasser on such track, and the company is under no obligation to construct its tracks with reference to the safety of trespassers who may go on the track without authority. If, therefore, you believe from the evidence that William Walker, Jr., was a trespasser on the defendant's track at the time he was injured, that is, if he was on the track and not at a crossing, and saw defendant's engine and cars approaching and did not leave the track, but continued walking upon it, and after seeing the train approaching, and having ample time to leave the track, and while walking upon the track got his foot caught between the rails so that he

could not extricate himself in time to keep from being run over by defendant's train, and if you further believe from the evidence that said William Walker, Jr. could, by use of ordinary care for one of his age, have seen and known the danger of putting his foot between the rails, and that he did not notice where he was walking, and negligently got his foot caught, and that defendant's engineer did all he could after discovering that the boy's foot was caught to stop the train before reaching him, but could not do so, then you are instructed that the plaintiff is not entitled to recover, and you will find for defendant."

Other facts are sufficiently apparent from the opinion. (Railroad v. Landergos, 7 N. E. Rep., 55; Rush v. Railway, 12 Pac. Rep., 582; Railway v. Bradford, 2 S. W. Rep., 595.)

The defendant having authority from the proper authorities of the city of Houston to occupy New Orleans avenue with its railroad track and to operate trains thereon, such right was not subservient to any other right, and was not limited by the right of others to walk or run vehicles over the track.

The Constitution and laws give the city authorities the right to permit the use of streets in a city or town by railroads, and when this right is granted by the proper city authorities, as is admitted in this case, to the railroad, the company's right to use and operate the road is not subservient or limited as indicated by the charge. (Sec. 7, art. 10, Const. 1876; Rev. Stats., art. 4173; Sec. 23, Charter of the City of Houston, to be found in Special Acts of 1883, p. 15, et seq.; 2 Wood's Railway Law, sec. 320.)

*Brady & Ring,* for appellee.

GAINES, ASSOCIATE JUSTICE. Appellee, while walking along the track of a railroad in the city of Houston, upon which the appellant ran its trains, had his foot caught between the rails of the switch and run over by a train of the company. The accident resulted in the loss of his foot. He was but a boy at the time of injury, and brought suit by his father as his next friend, and obtained a verdict and judgment against the appellant for two thousand dollars.

The depositions of three witnesses residing in Davenport, Iowa, were taken on behalf of plaintiff, who testified that a certain device consisting of a block of wood fastened between the rails at the frogs of the switches was in use upon certain

railroads in the northwest, and had been so used for four or five years; that it prevented the danger to persons employed upon or walking over the track of catching a foot in the switch; and that without some similar contrivance the switches were not safe. To the reading of this testimony the defendant objected, but the objection was overruled by the court. The objections were in substance that the answers of the witnesses showed only that the appliance had been used upon a few railroads in a distant part of the country, and was not competent to prove that its use was so long and so generally established as to make it the duty of the defendant company to adopt and use it upon its road in Texas. We do not think the objection well taken. It is true that it is not the duty of a railroad company to discard reasonably safe machinery and to adopt a new device for the safety of its employes until, by its general continued use or otherwise, its superiority has been established. The evidence in this case shows that the frog of the switch, without some guard of this character, was dangerous to brakemen, and though to a lesser degree, also to pedestrians passing over the track.

The testimony objected to tended very strongly to prove not only that an unblocked switch was unsafe, but also that there was a simple, cheap and effectual device by which danger of accidents from this source might be avoided. It also appeared from other evidence in the case that at the place where the accident occurred there were no sidewalks, and that the street was practically taken up with railroad tracks. The public had the right to use the street to pass over it, either on foot or with vehicles, notwithstanding the right of way granted to the railroad company. (Baltimore, etc., Railroad Company v. Fitzpatrick, 35 Md., 32.) There being evidence calculated to prove that the switches were dangerous to persons who had the right to pass along or over the street, the testimony under consideration was admissible, as tending to show that there was a simple appliance which would have remedied the defect. We therefore think the court did not err in admitting it.

During the progress of the trial the counsel for the defendant asked the court to give the following instruction: "The jury are instructed that railroad corporations are not required to discard their machinery and appliances for operating their trains in order to introduce new inventions, which are supposed

to be improvements on the old appliances in use, but which are not in general use; and you are further charged that railroad companies are not, any more than individuals, bound to use the highest degree of care to avoid injuring one who may possibly trespass upon its property, but as to such persons are only required 'to use ordinary care.' " This was refused by the court and its refusal is assigned as error. But in our opinion the assignment is not well taken. We think that both the propositions contained in the charge was calculated to mislead the jury. The evidence did not present a question of the propriety of discarding the old machinery for new, but of the propriety and practicability of providing against a known danger by the addition of a simple device to appliances already in use. The first proposition may have led the jury to conclude that in the opinion of the court there was something to be discarded and was not applicable to the evidence and therefore improper. The second proposition in the instruction was calculated to induce the jury to consider the plantiff as a trespasser upon the track of the company. He had the right to pass along the street, especially in a case like this where there was no sidewalk, although the streets were occupied by the railroad track, and although it was his duty to get out of the way of a passing train; and therefore he was not in any sense a trespasser. The charge being calculated to mislead the jury, it was not error to refuse it.

What we have already said is sufficient to dispose of the fourth assignment of error. It complains of the refusal of the court to give a special charge, which would have directly instructed the jury, that if plaintiff went upon the track of the railroad he was a trespasser, and that the company was under no obligation to construct its track with reference to the safety of such trespassers. Such an instruction as applicable to the case made, was clearly erroneous and was properly refused.

Appellant's fifth assignment is, that the court erred in charging the jury as follows: "That the primary purpose and design of a public street in a city is for vehicles and persons to pass over and travel upon, and the use of such street for railroad tracks and trains thereon, when permitted, is to a certain extent, and in a limited sense, subservient to the original design of such streets for travel over and upon them. In this case it is admitted that defendant company had the right to use the track, and that the Texas & New Orleans Railway Company

owned the track, and has the right to use the street at the place where the accident occurred. A railroad company using a public street in a city for its track and trains thereon, should use all the care and precaution that it reasonably could and should to prevent accidents to any and all persons using such streets, and the nature and extent of danger from neglect should be taken into account by the jury in arriving to a proper conclusion as to whether or not the facts in evidence shows such neglect of duty on defendant's part."

The first objection to this instruction is that it does not define what the court means by the words "to a certain extent and in a limited sense." But we think no such definition necessary. There is nothing in this, when considered in the light of the whole charge, to lead the jury to infer that the company did not have the right to run their trains over the track at all times. They may have inferred that this right was limited by the duty of exercising reasonable care in keeping in order their track and operating their trains so as to prevent injuries to persons who also had the right to use the streets in passing from one point in the city to another. The charge intimates no other limitation upon the right of the defendant company to the use of its track along the street, and the jury could not have been misled into supposing that any other was meant. The further ground of objection to this charge is that it did not properly state the law as to the degree of care required of the defendant company. The instruction in effect tells the jury that the defendant was bound to exercise reasonable care to prevent danger to persons lawfully using the streets. In a leading case this language in used: "It is correctly said that, generally, between persons standing in no particular relation to each o'her, that alone is reasonable care, which, in the judgment of men in general, is proportioned to the probability of injury to others, and consequently, he who does what is more than ordinarily dangerous is bound to use more than ordinary care." (Morgan v. Cox, 29 Mo., 232.) This defendant in this case was bound to use a degree of caution corresponding to the danger of operating its trains over the street of a city, where, by reason of the absence of sidewalks, persons might be expected to walk along and across the tracks. This was reasonable care, and therefore the charge was not erroneous

Another portion of the charge is also complained of in the sixth assignment of error. The court there uses this language:

"if you find that either the owner of the track or trains using it, in the exercise of care, prudence and foresight, should have had the track protected so as to avoid danger therefrom," and it is contended that by the use of the word "foresight" the court imposed upon the defendant a degree of care much greater than the law requires. But we think, in the connection in which it was used, the term was synonymous with "prudence," and added nothing to the meaning of that word. The word "foresight" might very properly have been omitted, but we do not see that the jury could have been misled by its use.

Neither do we find any error in that part of the charge set out in appellant's seventh assignment. It instructs the jury, in effect, to find for the defendant if the track was safe, and if the engineer was not negligent in failing to ring his bell or to blow the whistle, or in failing to keep a proper lookout, and if after discovering plaintiff upon the track, he did everything in his power to stop the train. This was correct. If there was a failure on the part of the company or its engineer in either particular so mentioned, and this failure was the cause of the injury, then the verdict should have been for the plaintiff. In another portion of the charge the jury were told that plaintiff could not recover if by his own negligence he contributed to the injury. This disposes of the assignments presented in the appellant's brief, and we find no error in the rulings or charge of the court. The judgment is therefore affirmed.

*Affirmed.*

Opinion delivered February 28, 1888.

