CURTIS F. CORZELIUS V. ANN YATES OLIVER ET AL.

No. A-1875. Decided January 26, 1949.
Rehearing overruled April 13, 1949.
Second rehearing overruled May 25, 1949.
(220 S. W., 2d Series, 632.)

*Jones, Hardie, Grambling & Howell, Thornton Hardie, Fryer & Milstead, William H. Fryer,* all of El Paso, *Simon, Wynn, Sanders & Jones,* and *Marcus Ginsburg,* of Fort Worth, for petitioners.

It was error for the Court of Civil Appeals to hold that there was no evidence to show that Corzelius was, during the life of his option, ready and willing to pay the price required to repurchase his Colorado assets, and that, therefore, the judgment in his favor should be reversed and a judgment rendered for Mrs. Oliver repudiating her option agreement three months prior to the expiration of the option. Cummings v. Neilson, 42 Utah 157, 129 Pac. 619; Driebe v. Fort Penn Realty Co., 331 Penn. 314, 200 Atl. 62.

*Kemp, Smith, Brown, Goggin & White, Frank B. Clayton,* of El Paso, *Wilson & Wilson,* of San Angelo, for respondents.

There being no acceptance in writing of the purported option contained in the letter from defendant to her niece of Jan. 5, 1944, nor was there any acceptance in the terms of the purported option and hence no contractual relationship between plaintiff and defendant requiring the latter to convey to the former the ranch properties in controversy. The burden was also upon plaintiff to show that during the life of the option he was ready, able and willing to perform according to its terms within the time specified. Burford v. Pounders, 145 Texas 460, 199 S. W. (2d) 141; Patton v. Rucker, 29 Texas 402; Senter v. Dixie Motor Coach Corp., 128 Texas 389, 97 S. W. (2d) 945.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

Curtis F. Corzelius and Ann Yates Oliver were married in 1938 and divorced December 26, 1942. They executed a separation agreement June 1, 1942. In it he acknowledged he owed her $209,450.14, of which $172,450.14 was secured by deed of trust and chattel mortgage liens on certain Colorado ranch properties, ranching equipment, and cattle. Subsequently, she grew uneasy about the debt and asked him to convey her the mortgaged properties. This he did on January 5, 1944, when she was still a single woman. It was later that she married Robert H. Oliver.

Contemporaneously with the delivery of the deed and bill of sale, Mrs. Oliver delivered to Corzelius the following letter to be mailed by him to the addressee, a niece of Mrs. Oliver:

"ANN YATES CORZELIUS
Hotel Paso del Norte
El Paso, Texas

January 5th, 1944

Mrs. Hugo A. Auler
1408 Wathen Ave.
Austin, Texas

Dear Tince:

I have today closed a deal with Curt on the Colorado property and we have the following gentlemens agreement: That at any time within one year starting January 5th, 1944 to January 5th, 1945 should Curt pay me back all the money I have invested plus operating expenses and other expenses plus six per cent interest I have agreed to deed him the property back.

However should I see fit, within the year, to sell all of the property or even a part of it I also agreed to give him a ten day option to buy.

Please put this away for safe keeping should anything happen to me within this year as it is not for public knowledge and only between Curt and me.

Ann Yates Corzelius."

This letter-form memorandum of agreement was typewritten by Mrs. Oliver in Corzelius' presence and at his insistence. He testified he would not have conveyed her the properties had she not given him the letter.

About October 3, 1944, Corzelius told Mrs. Oliver in sub-

stance that he was arranging to pay the sums due her, and requested the use of abstracts of title to the land so he might complete arrangements to get the money necessary to reacquire the Colorado properties. She replied that she would not reconvey these properties to Corzelius if he was going to mortgage them to borrow the money with which to pay her. Also, she told him that if his brother or a Mr. Taggart loaned him any of the money necessary to repay her, she would not retransfer the assets. Moreover, she declared she was selling some of the cattle involved for $20,000 and was intending to sell one of the ranches and she would not give him credit for the proceeds of either sale. But for these statements which Mrs. Oliver made to Corzelius, he would have tendered her, prior to January 5, 1945, the money due her under the above letter. (Although Mrs. Oliver offered contradictory proof as to most of these facts, a jury found them substantially as stated.)

Corzelius testified he continued to urge Mrs. Oliver to keep her agreement to reconvey and at times he thought she would; but finally, upon her continued refusal, he sued her for specific performance in a district court of El Paso County. Upon trial, all issues submitted to the jury were found in favor of Corzelius and judgment was entered for him.

Under all the circumstances presented by this record, there was no error in the rulings of the Court of Civil Appeals upon the several contentions advanced by Mrs. Oliver except the point upon which this writ of error was granted. That point was that there was no evidence to show that Corzelius was ready and able to perform within the time limit of the option contained in the letter memorandum. 215 S. W. (2d) 231. The Court of Civil Appeals would have been within its province in holding this evidence insufficient and remanding the cause for a new trial, but a rendition of judgment for Mrs. Oliver cannot be sustained.

■ As is so frequently the case, a solution of this controversy must rest upon the basis of its own peculiar facts. These, as found by the jury, show that Corzelius and his former wife entered into a valid arrangement by which he was to convey her the Colorado properties and she was to reconvey them to him if within a year he repaid her the amounts she had given for the properties plus "operating and other expenses" and six per cent interest per annum. Corzelius undertook to exercise this right to repurchase much before the year had run out, but was met with an extraordinary development. Although Mrs. Oliver clearly had no right to superimpose additional conditions

upon her agreement to reconvey, she told Corzelius, when he advised her he wanted to exercise the option, that if he was borrowing any of the money with which to repay her she would not make the reconveyance. Since Corzelius had to borrow funds to reacquire the properties, she thus placed in his way an effective impediment so he could not tender the funds necessary to pay her the stipulated amount. Under these circumstances, she cannot complain of his failure to make tender of the required sum within the allotted time. Burford v. Pounders, 145 Texas 460, 199 S. W. (2d) 141.

In passing, it is to be observed that Mrs. Oliver contends she refused to reconvey because of a controversy with Corzelius about the profits from ranching operations. However, reasonably included in the jury's findings is a determination that she refused because Corzelius was going to borrow the money with which to pay her. And the record presents substantial evidence to this effect. It follows that the jury, having some evidence in the record to support its action, was at liberty to make this finding, and Mrs. Oliver's contention in this regard cannot be sustained.

■ The jury found, among other things, that Corzelius would have seasonably tendered Mrs. Oliver the required funds but for her statements to him, including her declaration that she would not reconvey if he was borrowing the money and mortgaging the properties to pay her off. His evidence in support of this finding consisted in part of certain hearsay statements to which proper objection was made. These included the testimony of Corzelius and his brother that one Col. Wood stated that a certain insurance company would lend Corzelius "a hundred or a hundred sixty-five" thousand dollars on the properties, subject to inspection. There is no doubt that this testimony was hearsay and should have been excluded.

■ Now, notwithstanding Mrs. Oliver's refusal to keep her agreement, it would appear but reasonable that Corzelius be required to show by competent evidence that he could have raised the money to pay her. Brown v. Binz, Texas Civ. App., 50 S. W. 483; Terrell, Atkins & Harvin v. Proctor, Texas Civ. App., 172 S. W. 996. But it would not be necessary for him to go so far as to produce a firm commitment for an adequate loan to handle the purchase. Banks, insurance companies, and others loaning money would probably be reluctant to execute a commitment for a loan to complete a sale of lands which the owner had declared she would not convey. This record does present proof, besides the improperly admitted testimony, that Cor-

zelius would have tendered the necessary funds within the contract period had Mrs. Oliver not repudiated her agreement. He testified that the cattle were of the reasonable value of $123,000 and the ranches together with their improvements were valued at $331,342, values which would certainly have supported a loan of substantial proportions. Moreover, Corzelius' brother testified that he was financially able to and would have loaned Curtis Corzelius the difference between the amount needed to repurchase the ranches and what an insurance company would loan against them. An officer of an El Paso bank testified the bank had agreed to loan Corzelius around $90,000 on the cattle involved. This and other testimony in the record, not necessary to detail, comprised, as a matter of law, some evidence to support the finding of the jury that Corzelius. but for Mrs. Oliver's repudiation of the contract would have been able seasonably to tender her the money required under the agreement to repurchase the properties.

■ Nor was Corzelius bound to do more here than make the tender which was contained in his pleadings. Obviously no use would be served by his producing at the trial money to pay Mrs. Oliver the agreed consideration when she had previously put herself in a position of default and had continuously refused to reconvey the property in keeping with her agreement. Burford v. Pounders, supra.

Mrs. Oliver's counsel insist that Corzelius was obliged to give her written notice of his acceptance of the offer to repurchase. If the contract so stipulates, as well as in other conceivable situations, written notice of an acceptance of an option to purchase real estate might be required. Corzelius did offer convincing proof that written notice was mailed to Mrs. Oliver in due time, but she denied having received it; and the issue was not submitted to the jury. However, such a finding was not necessary, since Corzelius was not obliged to give any other notice than that he had verbally given Mrs. Oliver. The courts will not oblige him to go through the futile and useless motion of asking her in writing to perform an agreement by which she had already announced she would not abide.

As has been indicated, we have concluded that the Court of Civil Appeals fell into error in sustaining Mrs. Oliver's point that the evidence wholly fails to show that Corzelius would have been ready and able to perform within the allotted time and in rendering judgment in her favor. However, Mrs. Oliver also raised the point that the evidence was insufficient to warrant a finding in favor of Corzelius on this issue. A finding of no evi-

dence, such as the Court of Civil Appeals made, includes the lesser finding that the evidence was insufficient to support the verdict. Najera v. Great Atlantic & Pacific Tea Co., 146 Texas 367, 207 S. W. (2d) 365. A determination of insufficiency of the evidence is exclusively within the province of the Court of Civil Appeals, and not subject to review here. Accordingly, the judgment reversing that of the trial court is affirmed, but the order rendering judgment for Mrs. Oliver is reversed and the cause is remanded to the district court for a new trial.

Opinion delivered January 26, 1949.

ON MOTIONS FOR REHEARING.

MR. JUSTICE HART delivered the opinion of the Court.

Petitioner contends in his motion for rehearing that instead of remanding the cause to the District Court we should remand it to the Court of Civil Appeals so that the Court of Civil Appeals can pass upon the sufficiency of the evidence to sustain the finding of the jury, in response to Special Issue No. 6, in substance that the petitioner would have made an actual tender of the consideration required by the agreement except for the repudiation of the agreement by Mrs. Oliver. We have concluded that the petitioner's motion should be granted.

The opinion of the majority of the Court of Civil Appeals discloses that that court held the answer of the jury to Special Issue No. 6 to be immaterial. The first reason for this holding was that the petitioner failed to show that he was ready and able to perform his part of the agreement, since the evidence did not disclose that the petitioner had binding commitments from third parties to lend him enough money to enable him to tender the consideration for the reconveyance of the property. The second reason for the court's holding was that the petitioner had failed to show that he was willing to perform the contract according to its terms, since he testified and all of the evidence showed that he was claiming the profits from the conduct of the cattle business by Mrs. Oliver from the time the property had been conveyed to her.

In our original opinion we expressly declined to uphold the first ground for the Court of Civil Appeals' conclusion, because we were of the opinion that it was not necessary for the petitioner to show binding commitments for loans in view of Mrs. Oliver's repudiation of her agreement. In connection with this holding, we stated our opinion that even when certain hearsay

evidence is disregarded, there is some evidence in the record to sustain the finding of the jury. Although we did not discuss the second ground for the Court of Civil Appeals' conclusion, it was implicit in our decision that this ground also was not sustained. However, since all parties have discussed this question in their motions for rehearing, we will state our views on it briefly.

■ The record discloses that Mrs. Oliver's concern was with the repayment of loans she had made to the petitioner and that the purpose of the conveyance of the property to her was to make sure that she would be protected. Her letter, written at the time of the conveyance to her, shows that all that she required of petitioner in order to obtain a reconveyance of the property during the period of the option was the repayment of the loans and expenses, plus six per cent interest. We think that petitioner was correct in his position that if these sums were tendered, then Mrs. Oliver would be required to reconvey all of the property, or account for the proceeds of any of the property which had been sold in the meantime. If any sale had resulted in a profit above expenses, we think Mrs. Oliver would be required to account for all the proceeds of the sale, including any profit. Likewise, the petitioner would be entitled to a reconveyance regardless of whether the property in the meantime had increased in value. We also think that the petitioner would be entitled to receive the natural increase of the cattle. See First Nat. Bank v. Western Mortgage & Inv. Co., 86 Texas 636, 26 S. W. 488. The cited case involved a chattel mortgage, and it is true that Mrs. Oliver in the present case was not a mortgagee, since petitioner was under no obligation to pay her the sums specified in her letter unless he took advantage of the option therein granted. Nevertheless, we think that the cited case furnishes a persuasive analogy, because the letter of Mrs. Oliver shows her intention to allow the petitioner to regain title to the property during the option period by repaying the loans and reimbursing her for any expenses, plus interest. We therefore think that petitioner did not negative his willingness to perform his obligation when he insisted on receiving any accrued profits and the increase of the cattle.

■ Since the Court of Civil Appeals did not regard the answer of the jury to Special Issue No. 6 as material, we think upon reconsideration that it is evident that the Court of Civil Appeals did not pass upon the sufficiency of the evidence to show that petitioner would have been ready and able to tender the consideration for the reconveyance but for the repudiation of the agreement by Mrs. Oliver. The Court of Civil Appeals'

decision was governed not by its view of the sufficiency of the evidence but by its views of the legal burdens resting on the petitioner, which views we have held to be erroneous in the respects we have indicated. We therefore have concluded that the proper order to be entered is to remand the case to the Court of Civil Appeals for its consideration of the question of the sufficiency of the evidence, in the light of our holdings on the legal questions discussed. Rule 503, Texas Rules of Civil Procedure; Henry v. Kirby Lumber Co., 110 Texas 218, 218 S. W. 363.

The respondents have filed a motion for rehearing which has been carefully considered. However, we think that our original opinion has correctly disposed of the questions raised in this motion. The respondents' motion for rehearing is therefore overruled. The petitioner's motion for rehearing is granted, the judgment heretofore entered is set aside in so far as it remands the cause to the District Court for a new trial, and the cause is remanded to the Court of Civil Appeals for further consideration in conformity with this and the original opinon of this Court.

Opinion delivered April 13, 1949.

### ON RESPONDENTS' SECOND MOTION FOR REHEARING.

MR. JUSTICE HART delivered the opinion of the Court.

■ Respondents' second motion for rehearing urges that if the cause is to be remanded to the Court of Civil Appeals, that court should not be limited to a consideration of the question of the sufficiency of the evidence to sustain the jury's verdict. We think that respondents are correct. Where one or more of the assignments in the Court of Civil Appeals raises questions exclusively within its jurisdiction, the practice of this Court in a case of this kind, in reversing the judgment of the Court of Civil Appeals, is to remand the cause to the Court of Civil Appeals for a consideration of all questions properly raised in that court which have not already been decided by the Court of Civil Appeals or this Court. McKenzie Construction Co. v. City of San Antonio, 131 Texas 474, 115 S. W. (2d) 617; Sullivan v. Flores, 134 Texas 55, 132 S. W. (2d) 110; Schroeder v. Brandon, 141 Texas 319, 172 S. W. (2d) 488; Ritchie v. American Surety Co. of New York, 145 Texas 422, 198 S. W. (2d) 85. In the present case, the Court of Civil Appeals may consider

all such questions, including the effect of the improper admission of hearsay evidence.

To the extent indicated, the respondents' second motion for rehearing is granted; in all other respects it is overruled.

Opinion delivered May 25, 1949.