The WHITNEY PROPERTIES COR-
PORATION, Appellant,

v.

Roy B. MORAN, Appellee.

No. 18054.

Court of Civil Appeals of Texas,
Dallas.

April 12, 1973.

Rehearing Denied May 10, 1973.

C. Robert Rainwater, Durant, Mankoff, Davis & Wolens, Dallas, for appellant.

Don Campbell, Hewett, Johnson, Swanson & Barbee, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

This appeal is from a summary judgment in favor of Roy B. Moran in his suit against Whitney Properties Corporation to recover liquidated damages for alleged breach of a real estate exchange agreement.

The facts are undisputed. On May 14, 1971 the Whitney Properties Corporation and Roy B. Moran entered into a written contract entitled "Exchange Agreement No. 37". By the terms of this agreement Whitney agreed to exchange certain described real property situated in the City of Oakland, California known as the "York Towers Apartment" for certain real property owned by Moran and situated in the City of Dallas, Texas and referred to as the "Pinion Tree Apartments". It was recited that the Dallas property was subject to an existing loan balance of $1,618,000, bearing interest at 8 per cent per annum, plus a 2 per cent gross income participation by the holder, payable at $12,553.13 per month, principal and interest included, until paid, in favor of Maxson-Mahoney-Turner Mortgage Company.

It was expressly agreed that the exchange of the properties should be upon certain terms and conditions specified. Among other things it was agreed that at the closing Whitney would pay Moran $134,500 cash, "plus an amount in cash equal to the amount by which $1,618,000 exceeds the unpaid principal balance of the first loan described in the agreement." It was also provided that Moran would pay the cost of a title insurance policy and any escrow charges on the Dallas property in the amount of the purchase price, insuring Whitney of fee simple title, free and clear of any and all encumbrances, except standard printed exceptions and subject to any existing leases or rental agreements. It was agreed that in the event the title company was unable to insure title to the Dallas property and the defect was not cured within thirty days from the scheduled closing date, then Whitney should have the option of being released from all obligations under the contract or taking such title as Moran could deliver. The closing date was set as being no later than July 15, 1971.

Paragraph 17 of the agreement provided for the execution by Whitney of a promissory note payable to Moran in the sum of $20,000. This note was to be held in escrow and delivered to Moran, as liquidated damages, in the event the exchange agreement was not consummated for any reason except by default or bad faith on the part of Moran.

Fidelity Title Company of Dallas was designated as the company which would serve as the escrow agent and provide title insurance policy requirements.

On July 13, 1971 Moran wrote Whitney and advised that he was ready, willing and able to consummate the exchange contemplated by the agreement on July 15, 1971 at the offices of Fidelity Title Company. On July 14, 1971 Moran's attorney forwarded to Fidelity Title Company a general warranty deed covering the Pinion Tree Apartments in Dallas, Texas from Moran to Whitney. The deed was forwarded with the instructions to hold the same until Fidelity Title Company had received from Whitney all of the consideration contemplated, not only the Exchange Agreement No. 37, dated May 14, 1971 between Moran and Whitney but also two other agreements of the same date. The deed from

Moran to Whitney contained the following paragraph:

"This deed is made and delivered subject to (i) the unpaid balance of that certain promissory note dated July 7, 1970, in the original principal amount of One Million Six Hundred Twenty-Five Thousand Dollars ($1,625,000), executed by Roy Moran Properties, Ltd., payable to the order of Maxson-Mahoney-Turner Mortgage Company, * * *."

Alleging that Whitney had failed to come forward on July 15, 1971 and consummate the exchange, Moran sought judgment for $20,000 as well as recovery of the note provided for in the agreement which represented the liquidated damages agreed upon by the parties. Whitney, in its answer, denied the validity of the contract and pled that it had elected to terminate the agreement pursuant to its terms and that it had been rendered null and void. In the alternative, Whitney asked that the contract be reformed.

Moran moved for summary judgment and attached thereto all the documents recited above. In his affidavit in support of motion for summary judgment Moran stated:

"That on and prior to July 15, 1971, I was ready, willing and able to consummate the transaction contemplated by Exchange Agreement No. 37."

Whitney also filed its motion for summary judgment, same being unverified and not being supported by summary judgment evidence.

On February 25, 1972 the trial court, after due notice, heard the motions for summary judgment of both Moran and Whitney. At that time the court allowed Whitney a period of ten days within which to file written briefs on the law concerning the interpretation of a portion of the agreement made the basis of the suit. Thereafter on April 26, 1972 Whitney filed a motion to file an amended affidavit in support of its motion for summary judg-

ment. This motion was denied and the court granted the summary judgment of Moran and overruled the motion for summary judgment of Whitney. The parties having stipulated the reasonable attorneys' fees, the court rendered final judgment in favor of Moran and against Whitney in the sum of $22,500. The court also ordered Fidelity Title Company to deliver to Moran the note in the sum of $20,000 executed by Whitney pursuant to the terms of the exchange agreement.

Whitney, in its first point of error on appeal, contends that the trial court erred in refusing to permit it to file amendments and additional affidavits in support of its motion for summary judgment after the hearing on February 25, 1972. We cannot agree with appellant. At the time of the hearing on February 25, 1972 the trial court had before it Moran's motion, together with attachments, and also Whitney's motion. The documents tendered by Whitney thereafter came too late and cannot be considered in opposition to Moran's summary judgment or in support of Whitney's motion. In considering a motion for summary judgment, the court is only required to consider the record as it existed at the time of the hearing. Dipp v. Rio Grande Produce, Inc., 330 S.W.2d 700 (Tex.Civ.App., El Paso 1959); Womack v. I & H Development Co., 433 S.W.2d 937 (Tex.Civ.App., Amarillo 1968).

Appellant, in oral argument before this court, concedes the validity of the authorities cited above but vigorously argues its other two points of error wherein it contends that the trial court erred in sustaining appellee Moran's motion for summary judgment. Appellant says that Moran has completely failed to establish, as a matter of law, that he is entitled to recover liquidated damages because of breach of the exchange agreement. Specifically, appellant says appellee Moran's statement in support of his motion for summary judgment that he was "ready, able and willing" to consummate the transaction on July 15, 1971, coming from an interested witness,

does nothing more than create an issue of fact which should have been decided by the court or jury trying the case upon its merits.

Tex.R.Civ.P. 166–A is plain in its provisions that the judgment sought shall be rendered if the pleadings, depositions, admissions and affidavits show that the moving party is entitled to a judgment as a matter of law. It is elementary that the burden is cast upon the moving party to support his motion for summary judgment with competent summary judgment evidence that demonstrates clearly and unequivocally his right to recover. All doubts as to the existence of a genuine issue as to a material fact are resolved against him. Tigner v. First National Bank, 153 Tex. 69, 264 S.W.2d 85 (1954). When the movant's evidence only serves to raise a fact issue the opponent to the motion need not come forward with contradictory proof. Torres v. Western Casualty & Surety Co., 457 S.W.2d 50 (Tex.Sup. 1970). In Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.Sup.1965), the court, after discussing the basic rules relating to summary judgments, pointed out that the evidence which favors the movant's position is not considered unless it is uncontradicted. "If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony."

The essential facts necessary to be believed in order to give support to the summary judgment in favor of appellee Moran come from Moran himself who is, of course, an interested witness. In his affidavit Moran says that he was "ready, able and willing" to consummate the contract on July 15, 1971. When we consider Moran's affidavit in the light of the facts developed in this record and before the court at the time the summary judgment motion

was acted upon, we are convinced that such evidence does not fall within the exception to the rule as announced in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., supra.

Several reasons are apparent from the record that would place Moran's affidavit, together with documents attached, in the category of summary judgment evidence which does nothing more than raise an issue of fact.

(1) When a party sues for breach of contract he need not tender performance of the contract but he must both *plead* and *prove* that he was ready, willing and able to perform his obligation under the contract in order to recover damages. 13 Tex.Jur.2d Contracts § 314, p. 571. In Brown v. Binz, 50 S.W. 483 (Tex.Civ. App., 1899), the court, in a similar situation, though not involving summary judgment, pointed out that the plaintiff, who alleged that he was ready, willing and able to provide a bond required by a contract with the defendant, must also show that he would have made the bond had the contract not been repudiated. The court observed in that case that a fact question did exist as to whether plaintiff could have raised a bond in sufficient amount to satisfy the contract. See also Del Curto v. Billingsley, 169 S.W. 393 (Tex.Civ.App., Austin 1914, writ ref'd) and Corzelius v. Oliver, 148 Tex. 76, 220 S.W.2d 632 (1949). In Terrell, Atkins & Harvin v. Proctor, 172 S.W. 996 (Tex. Civ.App., San Antonio 1915), the court again pointed out that even though a party alleged his ability to make payments, it was necessary that such party both allege and prove ability to make the payment as required by the contract. In the instant case Moran's broad and general statement to the effect that he was "ready, able and willing" does not bring the interested witness' testimony within the exception to the rule.

(2) The warranty deed tendered by Moran, as a part of his evidence of ability

and willingness to perform his part of the contract does not comply, in a material particular, with the requirements of the exchange agreement. Such exchange agreement provides that the Dallas property is subject to an existing first loan balance of $1,618,000 whereas the warranty deed tendered by Moran recites that the instrument is made and delivered subject to the unpaid balance of a certain promissory note in the original principal amount of $1,625,000. Moran tenders no evidence as to what the actual unpaid balance of the note was at the time of the closing of the transaction on July 15, 1971.

(3) The exchange contract, paragraph 7, obligates Moran to pay for the cost of the title policy insuring Whitney a fee simple title, free and clear of any and all encumbrances, except the exceptions mentioned in the contract. There is no summary judgment evidence tendered by Moran to demonstrate his compliance with this material portion of the agreement.

■ The foregoing situation is somewhat comparable to the facts in Swilley v. Hughes, 488 S.W.2d 64 (Tex.Sup.1972). The Supreme Court, in reaffirming the rule in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (1965), pointed out that the only summary judgment proof was the deposition of Paul Hughes, a party and an interested witness. The court pointed out that the testimony of the witness was not "clear, direct and positive" with "no circumstances in evidence tending to discredit or impeach such testimony", and therefore the summary judgment was improvidently granted. We think the same thing must be said about the case before us. Moran's affidavit, together with its attachment, falls short of meeting the burden imposed by law upon a party moving for summary judgment. Accordingly, the judgment must be reversed.

The judgment of the trial court is reversed and remanded.